TAYLOR
*v.*
JOOR.

</div>

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

| | |
|---|---|
| 7 | 273 |
| 44 | 897 |
| 7 | 273 |
| 45 | 1397 |
| 7 | 273 |
| 46 | 550 |
| 7 | 273 |
| 48 | 1020 |
| 49 | 1569 |

## THE STATE OF LOUISIANA *v.* JAMES CASSIDY.

*Charles Ford* gave a bond, with *James Cassidy* as his surety, in the sum of $1000, conditioned, that he should appear before the First District Court, to answer a charge of larceny, and not depart without leave of the court. The clerk issued a notice, stating that, on a certain day, the party to the appearance bond was called, but failed to appear; that the surety was called upon to produce him, but failed to do so; that the bond was therefore forfeited, and judgment entered against the surety. It was held, that this was a sufficient notice under the act of the 11th of March, 1837.

The party to such a bond should, if there be legal grounds, make an application to the court to set aside the judgment rendered upon it, within ten days after the notification thereof. If such application be overruled, he is allowed ten days, from the judgment overruling his application, for a suspensive appeal; and if he make no such application, he is allowed a suspensive appeal within ten days from the notification of the judgment. If no such appeal be taken within the periods stated, he is entitled to a devolutive appeal only.

Where it does not appear by the petition for a writ of prohibition, that the sheriff was about to sell the property seized, before the final disposition of the injunction suit, [the object of which was to restrain him from executing the judgment, but merely that he was about to close up the house seized, the writ will not be granted.

Although the statute provides, as the condition of the bond, that the accused shall appear; yet that means an effectual appearance, that is, that the party shall remain and submit to trial. Where, therefore, the bond which the accused and his surety signed, expressed on it face, that the accused shall be and appear before the First District Court of New Oleans,

35

STATE
*v.*
CASSIDY.

and not depart thence without leave of the court, to answer to the complaint brought against him for larceny, it was held, that such a condition was not more onerous than that which the spirit of the statute imposed.

APPEAL from the First District Court of New Orleans, *Larue,* J. *T. H. Howard,* for appellant. *Isaac Johnson,* Attorney General, for appellee. On an application for a writ of prohibition.* By the court:

PRESTON, J. On the 20th of June, 1850, a judgment for $1000 was rendered by the First District Court, against *James Cassidy,* as the surety of *Charles Ford,* on a bond conditioned for his appearance before the court to answer a charge of larceny preferred against him by the district attorney, in that court. Ten days' notice of the judgment was given to him, in pursuance of the act of the 11th of March, 1837; he did not cause it to be set aside for any of the reasons or by the means specified in the act, and on the 2d of July, 1850, the judgment was signed. Sometime afterwards, though the date does not appear, execution was issued against him upon the judgment, and the sheriff, under the directions of the district attorney, proceeded to seize his property. On the 28th of April, 1851, and we suppose sometime after the execution was issued, he took an appeal from the judgment.

It appears, moreover, by his petition to this court, for a writ of prohibition against the execution of the judgment, that he obtained an injunction against the further execution of the judgment. The injunction was dissolved, and he took a suspensive appeal from the judgment by which it was dissolved. He then applied to the district court for an order to restrain the sheriff from shutting up the house he had seized, on account of the appeals he had taken in the case. The district court refused to grant the application, on the ground, that the appeal from the judgment of forfeiture of his bond, was a devolutive, and not a suspensive appeal. He now applies to this court for a writ of prohibition, to restrain the district court and sheriff from proceeding under the execution.

The applicant has placed before us, the record of the appeal from the judgment of forfeiture before us, by which the dates appear; and that judgment was rendered the 20th of June, 1850, and that the appeal was taken only on the 28th of April, 1851. The date of the execution does not appear, but we presume it was long after the notice of judgment. The appeal was devolutive, and not suspensive, because taken more than ten days after the judgment and notice of the same.

It is urged, however, by the applicant, that a copy of the judgment, after being signed, should have been served upon him. The third section of the act of the 11th of March, 1837, prescribes, that it shall be the duty of the clerks of the several district courts out of the city of New Orleans, and of the criminal court, to issue notices of such judgments to the parties concerned, as in ordinary civil cases, and on service and return thereof, after the usual delay, to issue executions on all such judgments, which it is made the duty of the several sheriffs throughout the State, to execute without delay." Bullard and Curry's Dig. 281-2.

A notice was issued by the clerk, stating that, on a certain day, the party to the appearance bond was called, but failed to appear; that the surety was called upon to produce him, but failed to do so; that the bond was thereupon forfeited, and judgment entered against the surety for a thousand dollars. This is the

*Eustis, C. J.,* was absent when the application for a writ of prohibition was before the court.

notice which has always been given in such cases, and we think fully complies with the letter and spirit of the law.

After this notice of the judgment, there were various means and reasons, specified in the 1st and 2d sections of the act, for which it might be set aside, on application within ten days, and if the party was not possessed of any of these means of relief, or did not resort to them, it has been understood, especially since the allowance of appeals in criminal cases, that he might seek relief, within those ten days, by a suspensive appeal; but that if the appeal was not taken within the ten days, it would be only a devolutive appeal. If he had made a formal application to set aside the judgment within the ten days, no doubt ten additional days would have been allowed to appeal, after it was overruled. This is a reasonable construction of the law, especially as promptness in the disposition of criminal cases. and matters connected with them, is so indispensable to the welfare of society.

The suit for an injunction, the judgment disallowing it, and the appeal from that judgment, are not before us, and we cannot say, therefore, that those proceedings justify the application for a prohibition. The injunction could only maintain things in *statu quo*, until its final determination. Now, it does not appear by the petition for a writ of prohibition, that the sheriff was about to sell the property seized before the final disposition of the injunction suit, but merely that he was about to close up the house seized, which he might do for the purpose of keeping and preserving it under his seizure, until the injunction suit should be finally terminated. We could not legally restrain him from doing so, as he is accountable for the proper preservation of the things seized by him.

In the record of appeal from the judgment of forfeiture, we have examined the assignments of errors, and, as at present advised, do not think them well founded. This is an additional reason for refusing to grant a writ of prohibition, though we will not express a positive opinion on the appeal, until it is regularly tried.

The application for a writ of prohibition, is therefore dismissed, at the costs of the applicant.

---

## SAME CASE—ON THE MERITS.

PRESTON, J. On the 29th of May, 1850, *James Cassidy* entered into a bond to the State as the surety of one *Ford*, accused of larceny, that he should appear and answer to the charge before the First District Court of New Orleans, and not depart without the leave of the court. He was arraigned, plead not guilty, and put himself on the country for trial. But, on the 20th of June, the day fixed for the trial, though duly notified, he did not appear. A *capias* was issued, but he was not arrested, nor ever afterwards appeared.

On the 2d of July, 1850, in pursuance of the act approved the 11th of March 1837, on motion of the district attorney, the bond was declared forfeited, and judgment entered against *Ford* and *Cassidy*, *in solido*, for its amount and costs. In pursuance of the act, ten days' notice was given to *Cassidy* to set aside the judgment, if he had any cause. A like notice was issued to *Ford*, but he was not found.

*Cassidy* did not attempt to set aside the judgment in the district court, but, on the 28th of April, 1851, took this appeal.

STATE
*v.*
CASSIDY.

He assigns for error, that no notice was given to the accused to appear and stand his trial; that the notice, if given, must have been a written notice, emanating from the clerk's office, served by the sheriff, and his return on file, and that there is nothing in the record showing such notice. The statutes do not prescribe in what form the notice shall be given, and the rules of the court are not before us. In their absence, we should suppose, that an oral notice of the day of trial, when the prisoner was arraigned, would have been sufficient. On the day of trial, an entry is made that the accused did not appear for trial, though duly notified. We are at least to presume, that he was duly notified, since the defendant did not make the objection within the ten days allowed by law for doing so.

He assigns in the next place for error, that the condition of the bond was, that the accused should appear in court when notified. He did appear and pleaded to the information filed. The law of 1837, only authorized a forfeiture of the bond and judgment on it, when the accused failed to appear on the day named; leaving to the State recourse by ordinary action only, for any subsequent failure, to abide by the decision of the court. The bond was therefore improperly forfeited, and judgment rendered against the surety, without observing the due forms of law, and contrary to law and the Constitution of the State and of the United States.

The condition of the bond in this case, as expressed on its face, is, that the accused shall be and appear before the First District Court of New Orleans, to answer to the complaint brought against him for larceny, and not depart thence without the leave of the court. It is true, the statutes provide, as the condition of the bond only, that the accused shall appear; but that means an effectual appearance; and that effectual appearance is, that the party shall remain and submit to trial and judgment. The condition expressed in the bond under consideration, does not, therefore, exceed the legal import of the condition required by the statutes. It is usual and proper, indeed, on appearance, to continue the bond with the assent of the surety, and we have no reason to doubt that this course, being a mere matter of practice, was pursued in the present case, as the surety did not make the objection when notified to offer any reasons he might have to set aside the judgment of forfeiture against him. As to the notification mentioned in this bond and assignment of errors, we have already disposed of it.

It is next alleged, "that the act of the Legislature under which the judgment of the lower court was rendered, is unconstitutional, null and void, and has been repealed by subsequent legislation." No argument or explanation has been offered in support of this ground.

It is lastly urged, "that the obligation of the surety was a civil one only, and must be enforced according to the rules prescribed for civil actions. The bond for the appearance of persons accused of crimes, is a means provided to ensure the prosecution and punishment of criminals; the forfeiture of the bond, by judgment, has always been regarded as a criminal proceeding, and whether criminal or civil, was obtained, in this case, in the mode pointed out by the act of the 11th of March, 1837, passed expressly for the purpose.

The judgment of the district court is affirmed, with costs.